IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**ALEXANDER WASHINGTON, JR.,**

    **Plaintiff,**

vs.                                            **CASE NO. 4:07cv30-RH/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Alexander Washington, Jr., applied for a period of disability, disability insurance benefits, and supplemental security income benefits.  Plaintiff was 51 years old at the time of the administrative hearing (September 12, 2005), had a high school

equivalency education, and had past relevant work as an unskilled laborer.  Plaintiff alleges disability due to degenerative changes in his cervical and lumbar spine.

The Administrative Law Judge found that Plaintiff has the residual functional capacity to sit or stand for 6 hours in an 8 hour day, lift or carry or push or pull up to 20 pound occasionally and 10 pounds frequently, but cannot climb, work at heights, or with dangerous machinery, and thus concluded that he can perform a broad range of light work.  R. 21.  He found that although Plaintiff has a mood disorder, his mood disorder does not preclude his ability to work.  *Id.*  The ALJ found that Plaintiff could do some of his past relevant work (farm worker and assembly line worker, as he previously performed those jobs) and other work in the economy (hand bander, and shipper).  R. 21-22.  He concluded that Plaintiff was not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

    A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

    The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

    1.    Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

> The Commissioner's rules define "light work" in part:
>
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

**Analysis**[1]

### Testimony at the administrative hearing

Plaintiff testified that he had last worked in September, 2004, doing yard work. R. 224. He said he worked about two days a week because "the other three I would be too tore up to go back to work." *Id*. He also laid surface irrigation pipe and worked 8 hours a day. R. 225. He said that the work was too much for him and his supervisor told him to quit doing it. R. 226. The work required that he lift about 10 pounds. *Id*. He also mowed on a seated riding mower. *Id*. It was a large area to mow. R. 227.

Plaintiff said that he also worked on an automated assembly line that made "cookie pies" with cream filling. R. 230. This job did not require any lifting. *Id*. He worked on a tobacco farm, standing and walking down rows, trimming the tobacco by hand. R. 234. No lifting or significant bending was required. R. 235.

Plaintiff worked as a hand bander, banding stacks of new plywood. R. 237. It was a standing job, with no lifting required. *Id*. He had to band a new stack every ten minutes, and could sit in the intervals. R. 238.

Plaintiff testified that he had three defective disks in his back. R. 239. He said his hips were twisted, and he sometimes needed help to rise from his bed. *Id*. He received treatment at the Veteran's Hospital, but he had not been referred to an

---

[1] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, available from Westlaw. Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com (Medical Dictionary link).

orthopedic specialist. *Id.* His current medications included propoxyphene[2] and Naprosyn.[3] 240. He said he took one propoxyphene pill every four hours. R. 242. The pills helped a little with the pain, but made him sleepy. R. 247, 261.

Plaintiff said he did not bother to go to the Veteran's Administration Hospital in Lake City, Florida, for back pain because he did not have the money to pay the medical fees. R. 243. Plaintiff admitted, however, that the VA Hospital did not charge any fees and his medicines were free. R. 244.

Plaintiff said the doctors at the VA Hospital had not prescribed physical therapy, exercises, or stretching for his condition. R. 243, 245. A TENS unit had not been prescribed, either. R. 245. Plaintiff used a cane, but it had not been prescribed by a physician. R. 248. Plaintiff said that he had not been referred to a neurologist, neurosurgeon, or an orthopedic physician. R. 243. He was not treated at the VA Hospital for any emotional problems, either. R. 244.

Plaintiff said he had pain in his lower back down into his left and right hips and down the back of his leg. R. 245. He said he had a swollen spot in the back of his neck. R. 246. He described the pain as a stabbing pain that comes and goes with movement. *Id.* He said the pain was about 7 or 8 on a scale of 10. R. 263.

---

[2] This is probably the generic version of Darvocet-N 50 or 100, which contains propoxyphene hydrochloride, a mild narcotic analgesic related to methadone. PHYSICIANS' DESK REFERENCE (2004), pp. 403-404. Elsewhere in the record this medication is referred to as Darvocet.

[3] Naprosyn is a nonsteroidal anti-inflammatory drug. PHYSICIANS' DESK REFERENCE (2004), p. 2902.

Plaintiff said he thought he could sit for 30 to 45 minutes before he had to lie down. R. 249. He thought that he could stand for only 30 minutes, and walk for about a block. *Id.* He did not think he could lift 10 pounds occasionally. R. 250.

Plaintiff said that at home, he just sits and looks out the window. R. 251. He said he did not do any cooking, laundry, or vacuuming, but he sometimes tries to sweep. *Id.* He does not shop or drive a motor vehicle. R. 252. He said he sits and watches television all day, from the morning until 9:30 or 10:00 p.m. R. 251. Plaintiff also reads a lot. R. 253. He frequently takes naps of about an hour and a half during the day. R. 262.

Plaintiff said he had had thoughts of killing himself. R. 258. He felt he was of no use to the world any more. *Id.* He said that he had been referred for counseling, but did not have the money. *Id.* The counseling facility was about a mile from his home. R. 259.

The vocational expert, Robert Bradley, said that the farm and hand bander jobs as Plaintiff described them were light work, and the assembly line job is generally a light work job. R. 266-267. All of these jobs are unskilled. *Id.* The ALJ assumed that Plaintiff could stand or sit for 6 hours a day, lift 20 pounds occasionally, lift 10 pounds frequently, and not work at heights or around dangerous machinery. R. 267. The expert said Plaintiff could do the assembly line and farm jobs as he performed them, and a shipper job, not as Plaintiff previously performed it, but as described in the national economy. R. 268. If one assumes that Plaintiff would have to sit for 6 hours a day, the expert said he could no longer do the jobs described above, but could do a number of unskilled sedentary jobs in the national economy, such as surveillance

system monitor, assembler, charge account clerk, and photograph mounter.  R. 268-269.

### Medical evidence

Plaintiff's records of medical treatment at the Veteran's Administration Hospital in Lake City, Florida, begin on July 25, 2000.  R. 158-161.  Plaintiff complained on that day of left shoulder pain for the past three weeks and numbness in the left hand.  R. 159.  There was no complaint of lumbar pain.  *Id.*  The diagnosis was cervical spondylosis, and the plan was to provide a soft cervical collar, nonsteroidal anti-inflammatory drugs (NSAIDs), and Robaxin.  R. 158.  The condition was deemed to be non-emergent.  *Id.*

The next encounter was a year later, on October 31, 2001.  R. 149-157.  Plaintiff said that he had had chronic neck pain since 1999 and chronic low back pain since 1979.  R. 149.  As past history, it was noted that Plaintiff had cervical spondylosis without myelopathy and chronic back pain on and off.  *Id.*  Plaintiff reported that he had had radiating pain and paresthesia in the neck and shoulder for the prior four weeks.  R. 157.  There was "discomfort" upon extension and palpation of the neck and left shoulder, but the range of motion of the left shoulder was within normal limits.  *Id.*  Plaintiff denied feelings of depression or lack of interest in things.  R. 154.  Naproxen was prescribed, and there was a plan to do an x-ray of the lumbar and cervical spine in six months.  R. 151.

Plaintiff was seen on May 22, 2002.  R. 130-133.  He underwent an ECG, with normal results.  R. 132, 129.  Plaintiff said that Naproxen had been effective for relief of low back pain, but he had flare ups when lifting "wrong."  R. 132.  Good body mechanics were discussed.  R. 132-133.  An x-ray of the left shoulder revealed normal

bony structure. R. 131. X-rays of the lower and cervical spine were to be done that day. *Id.* Naproxen was prescribed. *Id.*

The spinal x-rays on May 22, 2002, reported the following for Plaintiff's lumbar spine:

> Vertebral bodies show normal volume and appear well aligned. No fracture or dislocation identified. There is minimal narrowing of the L4-L5 disc space. The pedicles appear intact and the sacroiliac joints appear normal.

R. 122. The views of the cervical spine showed:

> There is straightening of the cervical curvature consistent with muscle spasm. Degenerative changes are seen with anterior lipping of the vertebral body predominating at C4, C5, C6, and C7. Narrowing of the C4-C5 and C5-C6 and C6-C7 disc space seen. On the oblique files there is significant encroachment of the neural foramina at these levels. Rudimentary cervical rib is noted at C7.

R. 122-123. The cervical spine impression was degenerative changes with cervical spondylosis and degenerative disc disease predominating at C4-C5, C5-C6, and C6-C7. R. 123.

On September 11, 2002, Plaintiff called his physician, concerned about his lack of employment. R. 130. He said his doctor had recommended that he not lift anything over 20 pounds and this prevented him for qualifying for many jobs. *Id.* He was referred to Social Security and Veterans Affairs to apply for benefits. *Id.*

Plaintiff was seen again on May 21, 2003, for a scheduled examination. R. 134-148. He complained of chronic low back pain with frequent radiation to his left leg, numbness of the thigh, with an ability to walk only 20 feet before pain was caused. R. 142. Plaintiff reported that he was unable to pick up objects weighing greater than 30 pounds. *Id.* Naproxen and propoxyphene were prescribed. *Id.* Plaintiff had no edema

or joint swelling in his extremities, and he had normal range of motion. R. 143. Plaintiff had tenderness in the lower spine, and he had back pain when squatting, toe walking, and heel walking, but the straight leg raising test for pain was negative. *Id.* The assessment by the treating physician, Dr. Thuc Ngo, was chronic low back pain with intermittent radiation to the left leg. *Id.* Dr. Ngo instructed Plaintiff not to pick up objects weighing greater than 30 pounds. *Id.* Naproxen and Darvocet were continued. *Id.*

Dr. Ngo also filled out an assessment form for Plaintiff on May 21, 2003. R. 117. Dr. Ngo said that Plaintiff had no deformity or loss of motion of his major joints causing any loss of function. *Id.* He said, however, that Plaintiff experiences back pain at 9 on a scale of 10, with radiation to the left leg more than the right. *Id.* He said that Plaintiff's grip strength, gait, and station, are normal. *Id.* He said Plaintiff cannot squat, walk on his toes, or walk on his heels. *Id.* Dr. Ngo said that an "assistive device," that is, a cane, was not medically necessary for ambulation. *Id.* When asked if Plaintiff could walk 30 feet without an assistive device, he said that Plaintiff can walk 20 feet without an assistive device. *Id.*

An MRI of Plaintiff's lower spine was taken on May 28, 2003. R. 119-120. The impression was:

> 1. Small focal posterior disc herniations at the levels of L3-4 and L4-5 but without mass effect upon the neural foramina or nerve roots. 2. Broad based disc bulge at L5-S1 that causes mild narrowing of both the left and right neural foramina. 3. Schmorl nodes[4] at L4 affecting the posterior superior border and inferior endplate.

---

[4] A nodule or little knot seen in radiographs of the spine, due to prolapse of nucleus pulposus into an adjoining vertebra. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

Case No. 4:07cv30-RH/WCS

R. 119-120.  The broad based disc bulge noted above was seen to contact the nerve roots.  R. 119.

On August 11, 2003, Plaintiff was examined on a consultative basis by Maria Linda Dulay, M.D., Board Certified in Family Practice.  R. 170.  Plaintiff described his back pain "as sharp radiating to his left leg."  *Id.*  He reported that he drives and takes care of household chores and personal needs.  *Id.*  Plaintiff told Dr. Dulay that he could "lift up to 20 pounds, walk a mile, stand for 30 minutes and sit for 20 minutes at a time."  *Id.*  The only medical records available for Dr. Dulay's review were the x-rays taken on May 23, 2002, "showing degenerative changes with spondylosis and degenerative disc disease at C4-5, C5-5 and C6-7."  *Id.*  Dr. Dulay did not have the MRI noted above.  *Id.*  Plaintiff denied that he suffered from depression or mood swings.  R. 171.  Upon examination, Dr. Dulay found that Plaintiff had good and functional grip in both hands, with fine manipulation.  R. 172.  While he could not walk on his toes due to pain, he could walk on his heels.  *Id.*  She found that Plaintiff could walk without a cane and his balance was "fairly good."  *Id.*  The straight leg raising test was negative bilaterally.  *Id.*  No muscular atrophy or hypertrophy was noted.  *Id.*  No gross spine deformity was seen, but Plaintiff complained of "chronic nagging low backpain with[] radiation to the left leg with questionable paraesthesia."  *Id.*  Dr. Dulay found that Plaintiff's range of motion in all joints was within normal limits and functional "except a slight limitation of range of motion of the lower back."  *Id.*  No edema was noted.  *Id.*  The neurological examination was "grossly normal."  *Id.*  Dr. Dulay concluded that Plaintiff has degenerative joint disease and recommended a referral to an orthopedic specialist "to determine if he is really disabled to do any work related activities."  *Id.*

Plaintiff had a mental examination by Gregory E. Pye, Ph.D., on August 13, 2003. R. 174. Plaintiff described back pain "so chronic that he has contemplated suicide." *Id.* Plaintiff said his back pain "worsened in February of this year when he was working at Labor Ready, a temporary force, using a sledgehammer and his back went out on him." *Id.* Plaintiff reported to Dr. Pye that:

> When asked about activities of daily living skills, Mr. Washington reports having problems with bending and that turning in the shower bothers him. He is unable to put his shoes on. Around the house, he says that he is unable to stand long enough to wash the dishes. He does a little bit at a time. He is unable to [lift] or carry. When asked about his daily routine, Mr. Washington said that he tends to stay at the house and that he takes medications. He looks out the window at people passing by. He feels badly about not being able to work and would like to work. He feels bored and does not know what to do with himself. He says that he will occasionally ride around town with a cousin. He says that the most comfortable position for him is on his left side with his knees drawn up to his chest.

R. 175. On examination, Dr. Pye found Plaintiff to be alert, well-oriented, clear, coherent and relevant in his speech, with mildly restricted affect and mildly dysphoric mood. R. 176. Plaintiff denied any recent changes or problems with sleep or significant changes in appetite. *Id.* He had no history of self-harm behavior, but thought of harming himself because he felt useless. *Id.* Dr. Pye's diagnostic impression was Mood Disorder Due to Chronic Pain. *Id.* Dr. Pye concluded:

> At the present time, it does appear that Mr. Washington's mood is severely impacted by his chronic pain. It is the physical ailment which would preclude his ability to work not any problem with his mood. In fact, if the pain were to dissipate, it is expected that his mood would improve greatly.

R. 176.

Plaintiff did not seek medical care from May 21, 2003, to November 20, 2004. R. 209. He missed an appointment in May, 2004. *Id.* On November 20, 2005, he

complained of a headache for 3 months, swelling in the neck since 1999, lower back pain since 1970, tenderness in the left flank for the past week, pain in the left kidney for one week, and an impacted wisdom tooth. R. 212. Plaintiff smelled of alcohol. *Id.* Plaintiff's medications still included Naproxen and propoxyphene (Darvocet) to be taken as needed for pain. *Id.* and R. 210.

**Whether the ALJ gave inappropriate weight to the opinion of a non-examining medical consultant**

On May 30, 2003, a non-examining physician filled out a form expressing the opinion that Plaintiff can frequently lift 10 pounds, stand for 6 hours, and sit for 6 hours in an 8 hour workday, and thus is capable of doing light work. R. 163. On September 19, 2003, another non-examining physician, David Guttman, M.D., expressed the same opinion. R. 192. The ALJ gave "significant" weight to these opinions, R. 20-21, and indeed, he reached the same conclusion as to Plaintiff's residual functional capacity to do light work.

Plaintiff contends that this was error. He argues that Dr. Guttman is a pediatrician, without expertise with respect to the opinion given. He also argues that Dr. Guttman did not have available more current medical evidence.

The hierarchy of medical opinions is well-established in Social Security cases. The opinion of a claimant's treating physician must be accorded substantial or considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Broughton v. Heckler, 776 F.2d 960, 960-961 (11th Cir. 1985); Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the

opinion of a consulting physician. Wilson v. Heckler, 734 F.2d 513, 516 (11th Cir. 1984). A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Finally, the opinion of a non-examining physician is "entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990), *citing*, Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir.1985). Nonetheless, assessments by non-examining physicians may be considered by the ALJ as expert opinions. 20 C.F.R. § 416.927(f)(2)(i).

The ALJ in this case viewed the non-examining medical opinions as deserving some weight but not as much weight as opinions by treating or examining physicians. R. 21. The ALJ, therefore, correctly followed the law. Further, the ALJ prefaced this section by stating that he gave significant weight to Plaintiff's treating physicians. R. 20. The ALJ reasoned that the objective medical evidence did not provide a basis for finding limitations greater than those expressed in the opinions of the non-examining physicians.[5] R. 21.

---

[5] The ALJ said:

> The undersigned accords significant weight to the medical opinions of the attending and treating physicians at the Veterans' Administration which independently concur with those of the State Agency as well as those of the consultant physicians. I note that his attending and treating physicians have prescribed no more than conservative treatment despite the claimant's complaints of alleged pain. They have not prescribed therapies, surgeries, or TENS unit. Further, the cane the claimant has for ambulation was not prescribed to him, but was given to him by a friend.

R. 21.

This conclusion had been preceded by a lengthy discussion of the objective medical evidence and a determination that Plaintiff's assertions of greater disabling pain were not credible. R. 17-20. The ALJ said that he did not minimize the medical impairments suffered by Plaintiff as demonstrated by the record, and noted that these impairments do limit his activities. R. 19-20.

> However, the clinical findings demonstrating these impairments do not disclose any abnormality capable of producing pain of incapacitating proportions. He has disc herniations and bulging discs at various levels. The medical evidence shows foraminal encroachment, not nerve root impingement. The claimant's physicians have not prescribed any aggressive medications.

R. 20. The ALJ then determined that Plaintiff's "allegations regarding his symptoms and limitations [are] not credible to the extent he claims he is precluded from all work activity" and gave the following reasons for this conclusion:

- The claimant has not been prescribed any strong pain medication for his alleged pain and he only takes a mild anti inflammatory.

- The veterans administration hospital has not referred him to any other specialist for his condition.

- He has not been recommended for any other modality of treatment, like physical therapy, a Tens unit or surgery.

- Diagnostic testing, like the MRI and spine x-rays, documents only mild findings.

- His objective physical findings on physical examination have been mild and do not support the severity of his alleged pain.

- Claimant's treatment has been fairly conservative since his alleged onset date.

R. 20.

---

Case No. 4:07cv30-RH/WCS

These findings are supported by substantial evidence in the record.[6] The x-rays and MRI showed only mild degenerative changes of the spine. While Darvocet is not a mild anti-inflammatory medication, it is a mild pain medication. It is not one of the stronger pain medications. Naproxen is a mild anti-inflammatory medication. No physical therapy was prescribed, and surgery was not contemplated. Though Plaintiff testified that he could not afford health care, he acknowledged that health care at the VA Hospital is free. His examinations often revealed normal range of motion, no muscle atrophy, and negative results on the straight leg raising test. Dr. Ngo, the treating physician, determined that a cane was not medically needed, and it was found that Plaintiff could walk without a cane. Thus, it was not error to give some weight to the opinions of the non-examining State Agency physicians.

**Whether the ALJ erred in determining Plaintiff's residual functional capacity**

Plaintiff argues that Dr. Ngo found that he can walk "only 20 feet unassisted." Doc. 11, p. 11. Dr. Ngo's findings are a bit equivocal. When considered with other evidence, this comment is not substantial evidence for a finding that Plaintiff can walk only 20 feet "unassisted." Dr. Ngo was asked whether Plaintiff can walk 30 feet without an assistive device, and he said "20 feet." R. 117. This would imply a significant limitation upon Plaintiff's ability to stand and walk. Yet Dr. Ngo also said that an assistive

---

[6] "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). The ALJ satisfied these legal principles here.

device was not medically necessary for ambulation. *Id*. It is reported on the same day that Plaintiff had said to Dr. Ngo that he could walk only 20 feet before pain occurred, R. 142, so perhaps Dr. Ngo was simply repeating what Plaintiff said without making a firm medical finding. In any event, Dr. Ngo's examination that day did not reveal much in the way of objective evidence of inability to walk. Plaintiff had no edema or joint swelling in his extremities, and he had normal range of motion. R. 143. Plaintiff's back had tenderness in the lower spine, and when squatting, toe walking, and heel walking, but the straight leg raising test for pain was negative. *Id*. Further, Plaintiff testified at the hearing that he could walk for a block, R. 249, and Plaintiff told Dr. Dulay that he could walk a mile. R. 170. Dr. Dulay also found that he could walk without an assistive device. R. 172.

Finally, even if the ALJ should have found that Plaintiff's ability to stand and walk was significantly impaired, the vocational expert testified that there are a significant number of unskilled sedentary jobs in the national economy that Plaintiff can do. He named the following jobs: surveillance system monitor, assembler, charge account clerk, and photograph mounter. R. 268-269. In other words, if the most that Plaintiff can do is sedentary work due to pain, a finding of not disabled would still be required.

Plaintiff also contends that the MRI and x-ray evidence is inconsistent with the ALJ's residual functional capacity determination. The ALJ, however, adequately discussed the MRI and x-ray findings, explaining that the degenerative changes were only mild and not consistent with the degree of pain alleged. This finding is supported by the conservative treatment prescribed and the reasoning of the ALJ discussed above. In

summary, the ALJ's residual functional capacity determination is supported by substantial evidence in the record.

**Whether the ALJ failed to discuss mental limitations**

The ALJ determined at step 2 that Plaintiff's mood disorder was a "severe" impairment. R. 22. This is only a minimal finding. "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting* Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).

The ALJ also found:

> Due to the claimant's complaints of mood disorder (I concur with Dr. Pye['s] assessment that the claimant's mood disorder does not preclude his ability to work) I find that the claimant has no restrictions of activities of daily living, he has only mild difficulties in maintaining social functioning and only mild difficulties in maintaining concentration, persistence, or pace, and has no episodes of decompensation of extended duration.

R. 21.

These findings are supported by substantial evidence in the record. While there is evidence that Plaintiff has had thoughts of suicide and has been depressed, there is no evidence of difficulty in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation. Dr. Pye said that although Plaintiff's "mood is severely impacted by his chronic pain," he did not think Plaintiff's mood would interfere with his ability to work. He explained:

Case No. 4:07cv30-RH/WCS

> It is the physical ailment which would preclude his ability to work not any problem with his mood. In fact, if the pain were to dissipate, it is expected that his mood would improve greatly.

R. 176. The ALJ found that though Plaintiff does experience chronic pain, he does not experience pain to the degree alleged and this is supported by substantial evidence.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 28, 2007.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:07cv30-RH/WCS